IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALQUAN MUSLIM,<br><br>Plaintiff,<br><br>v.<br><br>DR. IHUOMA NWACHUKWU,<br><br>Defendant. | HONORABLE ANNE E. THOMPSON<br><br>Civil Action<br>No. 18-17341 (AET-DEA)<br><br>**OPINION** |

**THOMPSON, District Judge:**

This matter comes before the Court on Defendant Dr. Ihuoma Nwachukwu's motion to dismiss the complaint. (ECF No. 14). Plaintiff Alquan Muslim opposes the motion (ECF No. 20),[1] and Defendant filed a reply. (ECF No. 21). The Court has issued the Opinion below based on the written submissions of the parties and without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated below, the Court will deny the motion.

## BACKGROUND

Plaintiff is a convicted and sentenced prisoner, and this case arises from his medical treatment at New Jersey State Prison. Plaintiff has a medical history of "serious heart, kidney, back, and respiratory problems," and has issues related to a prior nose surgery. (ECF No. 1 ¶ 1). According to Plaintiff, these conditions cause him "to suffer from back and chest pain, trouble[d]

---

[1] Plaintiff filed a sur-reply without leave of court. (ECF No. 31). The Court has not considered it for purposes of this motion. L. Civ. R. 7.1(d)(6).

breathing, sweating, and dizziness" and that as "a result, Plaintiff cannot travel" in the Department of Corrections' ("DOC") regular transport vans. (*Id.* ¶ 2). The DOC possesses several special vans to accommodate inmates with certain medical issues but will not use those vans without a recommendation from medical staff. (*Id.* ¶ 4).

In November of 2015, Plaintiff received a ninety-day medical transportation pass to attend certain appointments. (*Id.* ¶ 5). Thereafter, Plaintiff makes no allegations until "2017 and 2018" when he saw an ear, nose, and throat ("ENT") specialist via telemedicine. (*Id.* ¶ 6). The specialist recommended the removal of a papilloma and an in-person evaluation, but "Plaintiff was unable to travel . . . because Defendant Nwachukwu refused to give [him] a medical transportation pass." (*Id.*).

According to the complaint, Defendant knew of Plaintiff's medical conditions and inability to use regular vans but refused to issue a medical transportation pass to punish Plaintiff for his previous "lawsuit against [Defendant], her friends, and coworkers." (*Id.* ¶¶ 4, 6).

Plaintiff then met with a different medical provider, who recommended an ENT consult and issued a medical transportation pass. (*Id.* ¶ 7). At some point afterwards, Defendant revoked the medical transportation pass to once again punish Plaintiff, which prevented Plaintiff from attending the ENT consult. (*Id.*).

On May 31, 2018, another medical provider examined Plaintiff for back pain issues and recommended that Plaintiff receive a magnetic resonance imaging ("MRI") scan. (*Id.* ¶ 8). According to Plaintiff, he was not able to attend the MRI because Defendant had again revoked the medical transportation pass for the purpose of punishing Plaintiff. (*Id.*).

On June 18, 2018, Plaintiff received another recommendation for an MRI and a medical transport pass. (*Id.* ¶ 9). On the day of the MRI, Plaintiff became aware that Defendant had again

2

revoked his medical transportation pass for the purpose of punishing Plaintiff, who was then unable to attend the MRI. (*Id.* ¶ 10). On this instance, the medical provider recommended transporting Plaintiff by wheelchair van, and Plaintiff implies that the medical vans have wheelchair accessibility unlike the normal vans. (*Id.* ¶¶ 9–10).

Similarly, on October 3, 2018, a cardiologist via telemedicine, recommended that Plaintiff go to a hospital for certain heart tests. (*Id.* ¶ 11). Officials were unable to transport Plaintiff on the day of the scheduled appointment, however, because Defendant again refused to recommend a medical transport for the purpose of retaliation. (*Id.*).

On October 29, 2018, the prison clinic issued Plaintiff a 365-day medical transportation pass, and Plaintiff rescheduled his missed appointments. (*Id.* ¶ 12). Before Plaintiff could attend the new appointments, he became aware on November 16, 2018, that Defendant revoked the 365-day medical transportation pass for the purpose of retaliation. (*Id.* ¶ 14).

Plaintiff contends that he exhausted his administrative remedies regarding Defendant's actions but that the "grievance Coordinator as well as the medical staff have intentionally failed to process, record, and answer Plaintiff's grievances." (*Id.* ¶ 16). Moreover, Plaintiff complained to the prison administration regarding the failure to address his grievances, but to no avail. (*Id.* ¶ 17).

Plaintiff filed the instant complaint on December 18, 2018. The Court granted his *in forma pauperis* application and screened the complaint pursuant to 28 U.S.C. § 1915. (ECF Nos. 4, 5). The Court permitted the complaint to proceed on Plaintiff's Eighth Amendment deliberate indifference and First Amendment retaliation claims under 42 U.S.C. § 1983. (ECF No. 5).

Defendant now moves to dismiss the claims against her. She argues that Plaintiff has failed to state a deliberate indifference claim, that Plaintiff has failed to exhaust his administrative remedies, and that the statute of limitations bars Plaintiff's claims. (ECF No. 14).

**STANDARD OF REVIEW**

When considering a motion to dismiss a complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party. A court may only grant a motion to dismiss if the plaintiff has failed to set forth fair notice of the claim and the grounds which make the claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Although Federal Rule of Civil Procedure 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

In reviewing the sufficiency of a complaint, a court must take "note of the elements . . . to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether" they plausibly entitle the plaintiff to relief. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (alterations in original) (citations omitted) (internal quotation marks omitted).

**ANALYSIS**

**A. Deliberate Indifference to Medical Needs**

Defendant argues that the complaint fails to state an Eighth Amendment deliberate indifference claim. Defendant maintains that her alleged refusals to provide Plaintiff with a medical transportation pass, do not rise to the level of deliberate indifference. Defendant does

4

not, however, directly address her alleged decisions to *revoke* Plaintiff's medical transportation passes.

To state an Eighth Amendment deliberate indifference claim, a convicted and sentenced inmate must plead facts indicating: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

As to the first prong, serious medical needs include previously diagnosed conditions requiring treatment or those that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in "unnecessary and wanton infliction of pain," lifelong handicap, or permanent loss. *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).

The next prong, deliberate indifference, requires proof that the official: "[1] knows of and [2] disregards an excessive risk to inmate health or safety." *Natale*, 318 F.3d at 582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In this context, "deliberate indifference" is a subjective standard. *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012). The official "must actually have known or been aware of the excessive risk to inmate safety" and it is "not sufficient that the official should have known of the risk." *Id.*

Courts have found deliberate indifference where an official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). In a delay or denial of care type of deliberate indifference claim, there is no presumption that defendants acted

5

properly. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 537 (3d Cir. 2017). A plaintiff must only demonstrate, from "the surrounding circumstances . . . that . . . non-medical factors" motivated the delay or denial. *Id.*

With regard to the first prong, Defendant does not appear to contest that Plaintiff experienced serious medical needs. Plaintiff alleges that he has previously diagnosed heart, ENT, and back problems, and that medical professionals opined that he required treatment related to those issues, on at least six occasions from 2017 through 2018. *See Lanzaro*, 834 F.2d at 347; (ECF No. 1 ¶¶ 6–14). Consequently, for the purposes of this motion, the Court finds that Plaintiff's medical conditions and related appointments constituted serious medical needs.

As to the second prong, Defendant contends that Plaintiff offers only "bare assertions" regarding his inability to use a regular transport van. In essence, Defendant argues that there was no risk of harm under the Eighth Amendment because Plaintiff refuses to use the regular vans solely due to his personal "preference . . . and . . . subjective concerns." (ECF No. 14-1, at 9).

A close review of the complaint reveals that it fails to specify how or why Plaintiff's medical issues require a medical van. Similarly, other than the wheelchair accessibility of the medical van, the complaint fails to mention any differences between the two vans. What the complaint does allege, however, is that on four separate occasions within the span of two years, medical providers issued medical transportation passes for Plaintiff to attend his appointments. (ECF No. 1 ¶¶ 7–14).

Taking all reasonable inferences in Plaintiff's favor, these medical providers must have issued the medical transport passes for a reason, *i.e.*, that they were medically necessary for his transportation. Such inferences, combined with the repeated allegations that Defendant refused to issue or revoked passes for the purpose of retaliation, raise a plausible claim of deliberate

6

indifference. Stated differently, Plaintiff has alleged facts to show that Defendant knew of his recommended medical treatment and prevented him from receiving that treatment, for nonmedical reasons, on at least six occasions. *See Rouse*, 182 F.3d at 197; (ECF No. 1 ¶¶ 7–14)).

Defendant attempts to characterize these allegations as mere disagreements with her medical or professional judgment. As discussed above, however, Plaintiff specifically alleges that Defendant revoked or withheld medical transportation for the purpose of punishing Plaintiff for his prior lawsuit. In this context, such allegations reach beyond Defendant's professional and medical judgment, and are sufficient to plead claims for deliberate indifference. Accordingly, Defendant's motion to dismiss for failure to state a deliberate indifference claim is denied.

**B. Exhaustion**

Next, Defendant argues that the Court should dismiss the complaint for Plaintiff's failure to exhaust his administrative remedies. Defendant summarily concludes that Plaintiff "fails to demonstrate that he has complied with the administrative regulations governing inmate grievances and that he exhausted his administrative remedies prior to filing this action." (ECF No. 14-1, at 11).

Under the Prison Litigation Reform Act ("PLRA") a currently incarcerated prisoner must exhaust all *available* administrative remedies with the prison before filing suit against its officers. *See, e.g.*, 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524 (2002). The Supreme Court has held, however, that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock,* 549 U.S. 199, 216 (2007).

On a Rule 12(b)(6) motion to dismiss, a district court may take into consideration an affirmative defense if such a defense "presents an insuperable barrier to recovery." *Flight Sys. v.*

*Elec. Data Sys. Corp.*, 112 F.3d 124, 127 (3d Cir. 1997). This defect in the plaintiff's claim, however, must appear on the face of the pleading. *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018).

With those principles in mind, it is difficult to discern Defendant's logic[2] on exhaustion. Defendant appears to acknowledge that Plaintiff is not required to plead exhaustion in his complaint, but then faults Plaintiff for "fail[ing] to demonstrate . . . that he exhausted his administrative remedies prior to filing this action." (ECF No. 14-1, at 10–11). Axiomatically, as an affirmative defense, and on a motion to dismiss, *it is the defendant's burden* to demonstrate that a plaintiff has failed to state claim. *Lupian*, 905 F.3d at 130. Plaintiff, however, need not "demonstrate" anything on this issue on a motion to dismiss, as plaintiffs "are not required to . . . demonstrate exhaustion in their complaints." *Jones,* 549 U.S. at 216.

Defendant does briefly refer to the allegation that prison staff "have failed to process, record, and answer Plaintiff's grievances," but offers the Court no further analysis. (ECF No. 14-1, at 11). The PLRA requires prisoners to exhaust only "available" administrative remedies. *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). Such remedies are unavailable, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

As the Court must accept as true, Plaintiff's allegation that prison staff intentionally failed to respond to his grievances, such failures rendered the prison's "administrative remedies 'unavailable' . . . under the PLRA." *See Robinson v. Superintendent Rockview SCI*, 831 F.3d

---

[2] A review of the case law cited by Defendant reveals that Defendant has conflated exhaustion at the motion to dismiss stage with exhaustion at the summary judgment stage.

148, 155 (3d Cir. 2016). Accordingly, Defendant's motion to dismiss for failure to exhaust is denied.

## C. Statute of Limitations

Defendant next contends that the statute of limitations bars Plaintiff's deliberate indifference claims. (ECF No. 14-1, at 11–12). Under 42 U.S.C. § 1983, the laws of the State in which the action arose governs the statute of limitations. *Estate of Lagano v. Bergen Cty. Prosecutor's Office,* 769 F.3d 850, 859 (3d Cir. 2014). In New Jersey, the statute of limitations for personal-injury torts is two years. N.J. Stat. § 2A:14-2. The date that a cause of action accrues under § 1983, however, is a matter of federal law. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). Under federal law, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or should have known of the injury. *Id.*

With those principles in mind, Defendant summarily concludes that because Plaintiff first received a ninety-day medical transportation pass on November 3, 2015, which "expired on February 1, 2016 . . . any alleged wrongdoing by [Defendant] would have occurred as of that date." (ECF No. 14-1, at 12). Defendant maintains then, that since Plaintiff filed his complaint on December 18, 2018, the statute of limitations bars the entire complaint. (*Id.*).

As an initial matter, Plaintiff does not appear to allege that Defendant committed any wrongdoing with regard to the November 3, 2015, medical transportation pass, which seems to serve only as background information. (ECF No. 1 ¶ 5).

More critically, however, Defendant appears to ignore the vast majority of the complaint. (*See* ECF No. 14-1, at 12). As discussed above, Defendant's alleged decisions regarding Plaintiff's medical passes occurred from as early as 2017 through on or about November 16, 2018. (ECF No. 1 ¶¶ 6–14). These decisions to revoke or refuse medical transportation occurred

within the two-year period prior to the filing date of the complaint on December 18, 2018 and form the basis of Plaintiff's deliberate indifference claims. (*Id.*). Accordingly, Defendant's motion to dismiss the complaint as untimely is denied.

## **CONCLUSION**

For the foregoing reasons, the Court will deny Defendant's motion to dismiss. An appropriate Order follows.

12-13-19
Date

ANNE E. THOMPSON
United States District Judge